IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL A. ANDRE,                                    )        Civil No.: 6:14-cv-02009-JE
                                                   )
                      Plaintiff,                   )        OPINION & ORDER
            v.                                     )
                                                   )
CAROLYN W. COLVIN,                                 )
Acting Commissioner of Social Security,            )
                                                   )
                      Defendant.                   )
_____)

John E. Haapala, Jr.
Attorney at Law
401 E. 10th Ave., Ste. 240
Eugene, OR 97401

        Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Sarah L. Martin
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

JELDERKS, Magistrate Judge:

Carol A. Andre ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is reversed and this case remanded for further proceedings.

## Procedural Background

Plaintiff filed her applications for DIB and SSI on March 11, 2011, alleging disability beginning August 27, 2008. Tr. 189, 196. After Plaintiff's claim was denied initially and on reconsideration, a hearing was convened on April 9, 2013, before Administrative Law Judge ("ALJ") Laura Valente. Tr. 34-58. The ALJ issued a decision on April 17, 2013 finding Plaintiff not disabled. Tr. 11-25. The decision became the final decision of the Commissioner on October 24, 2014, when the Appeals Council denied Plaintiff's subsequent request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born March 6, 1970, Plaintiff was 38 years old on the alleged onset date. Tr. 63. Plaintiff is a high school graduate. Tr. 224. She has past relevant work as a nurse assistant and nurse supervisor. Tr. 23. Plaintiff alleges disability due to: chronic pain in her lower back and bilateral hips; hypertension; high cholesterol; diabetes; and morbid obesity. Pl.'s Br. 2; tr. 220.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential

inquiry is summarized below, as described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

 <u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

 <u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

 <u>Step Three.</u> Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

 <u>Step Four.</u> The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

 <u>Step Five.</u> The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds

claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**The ALJ's Decision**

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through June 30, 2011, and had not engaged in substantial gainful activity since the alleged onset date, August 27, 2008. Tr. 13.

At the second step, the ALJ found plaintiff had the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine; degenerative joint disease ("DJD") of the hips bilaterally; and obesity. Tr. 14. The ALJ additionally noted the following non-severe impairments: right knee impairment; menometrorrhagia; diabetes mellitus; hypertension/atrial fibrillation; obstructive sleep apnea; chronic pain syndrome; and depression. Tr. 14-17. The ALJ noted that fibromyalgia was mentioned in the record, but not substantiated by documented symptomatology or diagnosis by a physician. Tr. 16.

OPINION & ORDER - 4

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 17.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). She found Plaintiff retained the capacity to:

> [L]ift and carry twenty pounds occasionally and ten pounds frequently. She can sit for one hour at a time, for a total of six hours in an eight-hour workday. She can stand and/or walk for one hour at a time, for a total of four hours in an eight-hour workday. She can never climb ladders, ropes or scaffolding. She can occasionally preform all other postural activities. She must avoid concentrated exposure to hazards due to potential medication side effects.

Tr. 18.

At the fourth step of the disability analysis, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 23. At step five, the ALJ determined that, based on the testimony of the VE, there were a significant number of other jobs in the national economy which Plaintiff retained the capacity to perform. Tr. 24.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the alleged onset date, August 27, 2008, through the date of the decision, April 17, 2013. Tr. 25.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the

burden of developing the record, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

**<u>Discussion</u>**

Plaintiff raises the following issues on appeal: whether the ALJ (1) properly evaluated her subjective symptom testimony; (2) provided sufficient reasons to disregard lay witness testimony; (3) properly determined Plaintiff did not meet or equal a listing; and (4) properly concluded Plaintiff was not disabled under the Act at step five.

I. <u>Plaintiff's Symptom Testimony</u>

The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 18-19. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009) (citing <u>Lingenfelter v. Astrue</u>, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine

whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

Furthermore, pursuant to Social Security Ruling ("SSR") 16-3p, available at 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective, and there is neither binding precedent interpreting this new ruling, nor whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, because SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy, the Court finds that retroactive application of the new SSR is appropriate.[1] SSR 16-3p, at *1; see e.g., ABCKCO Music, Inc. v. LaVere, 217 F.3d 684, 689-90 (9th Cir. 2000) (citing

---

[1] Although no court within the District of Oregon has specifically ruled on whether SSR 16-3p applies retroactively, recent District of Oregon SSA dispositions have incorporated SSR 16-3p into the analytical framework for evaluating ALJ findings regarding subjective symptom testimony. See, e.g., Mesmer v. Colvin, No. 6:15-cv-00947-MC, available at 2016 WL 5339728 (D.Or. Sept. 23, 2016); Burnstad v. Colvin, No. 6:15-cv-00921-SI, available at 2016 WL 4134535 (D.Or. Aug. 2, 2016).

Beverly Community Hosp. Assoc. v. Belshe, 132 F.3d 1259, 1265 (9th Cir. 1997)) (no balancing analysis required if a statutory amendment clarifies, rather than substantively changes, existing law); see also Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants . . . .") (emphasis in original).

The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she us a truthful person." Id. at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." Id. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" Id. at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." Id.

In her application materials, and during the administrative hearing, Plaintiff provided testimonial evidence as to the extent and limiting effects of her alleged symptoms, including: severe pain in her hips and knees bilaterally, radiating to her right leg; lower back pain; inability to sit or stand for more than 15 minutes at a time; the need to lie down at least two times per day for up to an hour; inability to adequately focus and/or concentrate due to pain; heart fibrillations and dizziness "a few times a week;" and depression causing weight loss. Tr. 36, 39-40, 43, 47-

48, 50-52. The ALJ provided several reasons for finding Plaintiff's allegations regarding her functional limitations and testimony regarding pain symptoms not fully credible.

Plaintiff first assigns error to the ALJ's credibility finding regarding fibromyalgia. Pl.'s Br. 14; tr. 16. In making the finding, the ALJ noted, "[a]t the hearing, claimant referenced fibromyalgia. Claimant, to the detriment of her credibility, has misrepresented her diagnosis of fibromyalgia." Tr. 16. Review of the administrative record supports the ALJ's finding that there are no references to fibromyalgia, aside from the single chart note of Divya Sharma, M.D. Tr. 355. Without more, the Court agrees it is plausible that Plaintiff misrepresented a fibromyalgia diagnosis to Dr. Sharvan, and therefore the ALJ's inference was not wholly irrational. Despite Plaintiff's argument that "[t]here is no evidence that Plaintiff misrepresented her fibromyalgia" to the doctor, her alternate interpretation of the record alone does not displace the ALJ's rational interpretation. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (court may not second-guess an ALJ's finding so long as it is rational and supported by substantial evidence).

Nonetheless, Plaintiff maintains that, contrary to the ALJ's assertion, Plaintiff did not mention fibromyalgia during the hearing. Pl.'s Br. 14. Review of the hearing transcript unequivocally reflects that it was the ALJ, not Plaintiff, who alluded to fibromyalgia. See tr. 47. Moreover, on this record, Plaintiff has never asserted, and does not now assert, that fibromyalgia contributes to her alleged disability in any way. See Pl.'s Br. 14; tr. 46-48, 220. As such, while the ALJ's inference may be a plausible interpretation of the evidence, the Court questions its relevance in the context of the ALJ's credibility finding. Indeed, the Ninth Circuit has long held that in order to discredit subjective symptom allegations, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)); <u>accord</u> SSR 16-3p, at *10 ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's statements.").

Here, the ALJ did not specifically identify which of Plaintiff's allegations were undermined by her alleged misrepresentation of fibromyalgia to her doctor. As such, the ALJ's general rejection of "the validity of [Plaintiff's] physical impairments" fails to meet the specific-and-legitimate legal threshold, let alone the required clear-and-convincing standard. The Court cannot, therefore, uphold the ALJ's fibromyalgia finding as generally applicable to all of plaintiff's physical limitation allegations.

Plaintiff next assigns error to the ALJ finding her less than fully credible because she was not compliant with her physicians' treatment recommendations. Pl.'s Br. 12, 15. For example, the ALJ found that Plaintiff failed to stop smoking despite being told she could not proceed with hip surgery until she did so. Tr. 20-21. The Court notes that a claimant's failure to stop smoking is generally disfavored as a factor in assessing the credibility of symptom allegations, because the failure to stop smoking is more often indicative of the powerful nature of nicotine addiction than testimonial veracity. <u>See, e.g.</u> <u>Strutz v. Colvin</u>, No. 3:14-cv-00807-SI, <u>available at</u> 2015 WL 4727459, at *7 (D.Or. Aug. 10, 2015) (failure to stop smoking is not a clear and convincing reason to discount pain testimony) (citing <u>Jones v. Colvin</u>, No. 3:13-cv-00890-SI, <u>available at</u> 2014 WL 3579523, at *6 (D.Or. July 18, 2014) (nicotine addiction may be a valid explanation for failing to follow a physician's recommendation to stop smoking)) (unpublished opinions).

OPINION & ORDER - 10

Based on the record before the Court, there is not a clear connection between Plaintiff's failure to stop smoking and the credibility of her pain symptom allegations. Moreover, ALJ erred to the extent she *generally* accorded diminished weight to all of Plaintiff's testimony because she did not stop smoking. SSR 16-3p.

However, the ALJ also purported to accord diminished weight to Plaintiff's testimony regarding the nature and severity of her symptoms and limitations because she provided *inconsistent* testimony regarding smoking. Tr. 21; <u>see, e.g.</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (prior inconsistent statements are a valid credibility factor). In support, the ALJ explained that Plaintiff did not initially identify smoking as a reason she had not undergone hip surgery, but that at the hearing, Plaintiff provided testimony about her cigarette consumption inconsistent with the record. Tr. 21. In support, the Commissioner argues that although Plaintiff testified that she had gone from smoking a pack of cigarettes a day in April 2012 to 5-6 per day by the time of the hearing, the record reflects she was already only smoking half a pack a day by February 2012. Def.'s Br. 10. While the ALJ's reasoning may be technically accurate, the Court does not find it to be a clear and convincing reason to discredit Plaintiff's testimony. In order to meet the clear-and-convincing threshold, the ALJ must, at minimum, identify specific reasons, supported by substantial evidence. <u>Lester</u>, 81 F.3d at 834. Here, the testimonial discrepancy of half a pack of cigarettes is not particularly compelling, but regardless, the ALJ failed to identify with any specificity which symptom testimony the alleged inconsistency allegedly impugned. <u>See</u> tr. 21 (" . . . testimony in contradiction of her medical records further detracts from her overall credibility, specifically, in regards to the nature and severity of her symptoms, impairments and limitations."). As such, the finding cannot be upheld. <u>Smolen</u>, 80 F.3d at 1284.

Plaintiff next assigns error to the ALJ finding she was not credible based on the underlying cause of her obesity. Pl.'s Br. 16. The ALJ explained, "[s]he has recently been able to lose weight by increasing her activity and by monitoring her diet. However . . . at the hearing and in contradiction of her medical records, portrayed this weight loss as a symptom of depression." Tr. 21. The ALJ supported her finding by noting that Plaintiff lost weight pursuant to her doctors' advice, and that in a chart note from 2012, she attributed her weight loss to their recommendations of diet and exercise. Id. Plaintiff argues that her testimony does not contradict the medical record because she "made continuing efforts to lose weight since at least 2007 and she lost weight due to depression." Pl.'s Br. 16. While Plaintiff's interpretation is plausible, the medical record does not include evidence that Plaintiff's depression affected her weight loss, and Plaintiff does not direct the Court to any such evidence. Id. As such, the Court may not displace the ALJ's interpretation. Morgan, 169 F.3d at 600. However, while the ALJ adequately linked Plaintiff's inconsistent testimony regarding the link between her obesity and depression, the finding is not sufficient to completely discredit all of her testimony regarding the nature of and severity of all her physical symptoms and limitations. Smolen, 80 F.3d at 1284. Accordingly, the ALJ's finding is upheld only insofar as it impugns Plaintiff's testimony regarding the severity and functional limitations of her depression and obesity.

Plaintiff also contends the ALJ erred by comparing her hearing testimony regarding her functional limitations to a 2009 functional report rather than a more recent 2011 report. Tr. 22, 226-33, 258-65. Plaintiff argues that her hearing testimony is consistent with her 2011 functional report because her physical condition progressively worsened after 2009. In support, Plaintiff notes the more recent report describes her inability to "cook, shop, perform household chores, and bathe without assistance" due to her progressively worsening pain. Pl.'s Br. 16; tr. 258-65.

OPINION & ORDER - 12

While the Commissioner does not specifically address the 2011 functional report, the Commissioner does assert that Plaintiff was able to maintain employment despite her impairments for some time, and that Plaintiff's symptoms were consistent before and immediately after the alleged August 11, 2008 onset date. Def.'s Br. 8. Indeed, Plaintiff concedes her hip and back pain were stable through July 2009. Pl.'s Br. 6. However, beginning in October 2009, Plaintiff reported increased pain in her low back and hip. Id.; see tr. 399. Thereafter, Plaintiff received steroid injections for bilateral bursitis (tr. 382, 390), and, eventually, also for "severe degenerative joint disease" in the right hip. Tr. 497-99. Thus, substantial evidence supports worsening of Plaintiff's condition perhaps as early as 2009, but certainly by 2011, when the second functional report was created. Indeed, the ALJ herself noted substantial worsening at that time. Tr. 23 ("Claimant declined in functioning in 2011 . . . ."). As such, the Court cannot uphold the ALJ's finding that Plaintiff's testimony was not credible because it was inconsistent with the 2009 functional report, in light of the 2011 report. Although the ALJ provided reasons for doubting the severity of Plaintiff's pain symptoms in 2008 and 2009, the ALJ did not provide any reason to discount Plaintiff's allegations of significantly worsening pain in 2010, 2011, 2012, and 2013, despite acknowledging her functional capacity degraded in 2011, and accepting that Plaintiff's physicians felt a hip replacement was appropriate by 2012. Tr. 20-23, 494-99.

The Commissioner argues that the ALJ appropriately found that despite claims Plaintiff could only sit for 10-15 minutes at a time, she was able to sit for the entirety of the 45-minute hearing. Tr. 22; Def.'s Br. 11. However, "sit-and-squirm" jurisprudence is another disfavored methodology for evaluating credibility, and Plaintiff argues her ability to sit through her hearing does not contradict her allegations of waxing and waning pain symptoms. Pls.' Br. 17. See Gallant v. Astrue, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit

physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."); <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ's observations of claimant's functioning during hearing may not form the sole basis for discrediting symptom testimony). Although the Commissioner responds that Plaintiff cites no evidence of waxing and waning symptoms, the medical record contains numerous references to waxing and waning pain symptoms. <u>See, e.g.</u> tr. 406, 416, 492. Moreover, State Agency reviewing physician Martin Kehrli, M.D., whose opinion the ALJ accorded significant weight, found that the medical record *supported* waxing and waning of pain symptoms. Tr. 77. Thus, the ALJ's observation-based finding is not clear and convincing.

The Commissioner additionally notes that Plaintiff does not challenge the ALJ's finding that her testimony regarding hypertension was "notably inconsistent" with her medical records. Def.'s Br. 11. The ALJ found that Plaintiff's hearing testimony regarding hypertension "detracts from her hearing testimony as to the nature and severity of her physical symptoms and overall physical functioning." Tr. 16. However, as noted above, while the ALJ's finding is sufficient to assess the veracity of Plaintiff's hypertension allegations, it is not a clear and convincing reason to discredit all of Plaintiff's physical symptom testimony in general. <u>Smolen</u>, 80 F.3d at 1284; SSR 16-3p. Nonetheless, independent review of the ALJ's analysis reflects the ALJ provided adequate rationales, specifically supported in the record, for according diminished weight to Plaintiff's allegations of having heart palpitations, dizziness, and/or atrial fibrillation multiple times each week. Tr. 15-16.

For the foregoing reasons, the ALJ's credibility analysis sufficiently impugns Plaintiff's allegations of disability as to fibromyalgia, depression and obesity, and hypertension. However,

the ALJ did not identify or specifically refute symptom or functional limitation allegations arising from Plaintiff's lumbar spine DDD and her right hip DJD in 2009 and beyond. Multiple chart notes of record document Plaintiff's worsening condition which are substantiated by contemporaneous reports of severe pain. Despite acknowledging Plaintiff's decreasing functionality by 2011, the ALJ failed to credit Plaintiff's allegations of increasing pain after 2010, predominantly because her pain reports in 2008 were interpreted as non-disabling. As such, the ALJ's conclusion ignores a well-documented record of progressive worsening, despite the degenerative nature of Plaintiff's properly established conditions.

Because the ALJ did not provide any valid reason to disregard Plaintiff's allegations of increasing pain in 2009 and thereafter, nor identify any specific testimony that was not fully credible, the ALJ's finding essentially amounts to an overarching generalization of Plaintiff's presumed character for truthfulness. Such a finding contravenes not only the clarifications set forth in SSR 16-3p, but also the specificity requirements long established by Ninth Circuit case law. Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); SSR 16-3p, at *10 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character for truthfulness in the manner typically used during an adversarial court litigation."). For these reasons, the ALJ's overarching credibility determination cannot be upheld on this record.

## II. Lay Witness Testimony

Plaintiff asserts the ALJ also erred in discrediting the testimony of her sister, Jana Tayler, her friend, Kasey Aikens, and her father, Lavonne Cubero. Lay testimony regarding a claimant's symptoms or how an impairment affects claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations

omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).

The ALJ accorded no weight to Ms. Taylor's written testimony that Plaintiff is often bedridden for 3-5 days, is unable to work a normal job, and is severely limited in basic household tasks. Tr. 22-23, 250-57, 317. The ALJ did not comment on the testimony of Ms. Aiken, who noted Plaintiff's health has severely deteriorated and has extreme difficulty walking, or the testimony of Mr. Cubero, who indicated that she is often incapacitated by "her hip popping out" and "excruciating pain." Tr. 316, 318.

The ALJ indicated that Ms. Taylor's testimony was not credible because her observations were contradicted by "radiographic imaging and physical examination findings indicate that her hip DJD and lumbar DDD had not progressed significantly in several years," and that Plaintiff was able to perform light work throughout that time. Tr. 23. However, although the record reflects Plaintiff may have retained some capacity to work after her alleged onset date, the record also evinces significant worsening thereafter, which the ALJ acknowledged. Tr. 23 ("The claimant declined in functioning in 2011 . . . ."). Moreover, the ALJ has also acknowledged that due to the severity of Plaintiff's impairments, hip replacement had been recommended. As such, although the ALJ made (erroneous) findings regarding Plaintiff's failure to follow treatment in the context of a negative credibility finding, it does not rationally follow that lay witness observations of Plaintiff's functional decline would also be non-credible. The record is somewhat ambiguous as to the precise timeframe of Plaintiff's increased pain symptoms and functional decline, the three lay witness opinions are consistent with Plaintiff's testimony and also consistent with the medical record insofar as they corroborate Plaintiff's physical deterioration.

OPINION & ORDER - 16

The Commissioner contends that the ALJ's proper rejection of Plaintiff's testimony carries over to the similar testimony of the lay witnesses, pursuant to Molina, 674 F.3d at 1115. However, insofar as the ALJ's credibility evaluation was flawed, the argument is unavailing. Here, the ALJ specifically failed to identify clear-and-convincing reasons to dismiss Plaintiff's allegations of severe, functionally-limiting pain due to her hip and lumbar impairments, although the ALJ appropriately dispensed with the allegations of disabling fibromyalgia, depression and obesity, and hypertension. However, the lay witness statements generally attribute Plaintiff's limitations to her lumbar back and hip problems, which the ALJ did not validly disregard. As such, the Commissioner's argument fails.

The Commissioner also cites Molina for the proposition that the lay witness opinions were contradicted by "more reliable" medical opinion evidence; specifically, the medical opinions of the non-examining State Agency physicians. However, this rationale also fails. Lay witnesses statements are competent evidence an ALJ should consider, because often the lay witness is in the best position to observe the severity and extent of a plaintiff's impairment and how it affects their ability to work. See Bruce v. Astrue, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (quoting Dodrill, 12 F.3d at 918-19). In contrast, the reviewing State Agency physicians never observe or examine a plaintiff at all, and in cases such as this where the objective medical evidence does not fully support Plaintiff's severe pain allegations, merely reviewing chart notes may be of limited utility. See Smolen, 80 F.3d at 1289 ("The rejection of the testimony of Smolen's family members because Smolen's medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records.") (emphasis in original).

OPINION & ORDER - 17

For these reasons, the ALJ failed to provide reasons germane to the lay witnesses for disregarding their testimony, which is assumed to be competent testimony an ALJ should consider. Nguyen, 100 F.3d at 1467.

III. Medical Opinion Evidence

Plaintiff contends the ALJ failed to sufficiently credit medical evidence in chart notes generated by her primary physician, Dr. Carroll. Specifically, Plaintiff argues the ALJ failed to adequately evaluate treatment notes from 2009 to 2013, including the doctor's note that Plaintiff was "quite limited functionally" in January 2012. See tr. 499. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester, 81 F.3 at 830. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti, 533 F.3d at 1040.

As discussed above, the Court agrees that the ALJ did not provide legally sufficient reasons to discredit Plaintiff's allegations of worsening pain from 2009 to 2013. Contrary to Plaintiff's contention, however, the ALJ did not altogether ignore medical evidence during that interval, as the ALJ provided a comprehensive summary of the relevant treatment notes. Tr. 20-21. Separate from Plaintiff's allegations of pain, the ALJ acknowledged Plaintiff's various injections in 2010, and 2011, an exacerbation in 2012, and range of motion findings within normal limits, until December 2012. Tr. 20. Accordingly, Plaintiff's argument is not supported by the record. Even assuming, however, that the ALJ had completely ignored the medical record after 2009, Plaintiff does not identify any specific functional limitations endorsed by Dr. Carroll beyond those included in the RFC.[2] See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his . . . injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way."). Accordingly, Plaintiff has failed to show harmful error. Molina, 674 F.3d at 1115 (ALJ's error is harmless where it is inconsequential to the non-disability decision).

Plaintiff also contends the ALJ wrongfully ignored Dr. Carroll's medical opinion that she is "quite limited functionally." Tr. 499. However, Plaintiff again fails to identify how Dr. Carroll's assertion, even assuming it is objectively true, undermines the RFC. The Court does not find inconsistency between Dr. Carroll's opinion that Plaintiff is "quite limited functionally," and the ALJ's RFC, which is itself quite limiting. See tr. 18. It is the ALJ's duty to interpret the medical evidence and resolve any conflicts or ambiguities; the Court may not simply re-interpret Dr.

---

[2] To the extent Plaintiff argues Dr. Carroll's notes necessarily demonstrate a presumptively disabling impairment under the Listings, the argument is addressed in the subsequent section of this Opinion.

Carroll's "quite limited functionally" observation to mean "more limited functionally than the substantial limitations contemplated in the RFC." Valentine, 574 F.3d at 692 n.2. Plaintiff simply does not proffer any objective evidence of limitation beyond that identified in the RFC, any medical opinion endorsing greater functional limitation, or any medical opinion suggesting Plaintiff is unable to perform any substantial gainful activity. As such, the Court has no objective basis upon which to adopt Plaintiff's preferred interpretation of Dr. Carroll's written statement.

IV. Step Three Error

Plaintiff argues that the ALJ erred by finding that her impairments did not meet or equal a presumptively disabling listing at step three. See 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Plaintiff's DDD and DJD did not meet Listing § 1.02 or § 1.04, even considering the effect of her obesity. Tr. 17-18. Specifically, the ALJ found that neither listing was met absent "evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, and because [Plaintiff] has consistently displayed intact motor, sensory, and reflexive functioning in her lower extremities." Tr. 18.

Plaintiff asserts she has not consistently displayed intact motor, sensory, and reflexive functioning in her lower extremities, and therefore should have been found to meet or equal Listing § 1.02 (major dysfunction of a joint due to any cause). Pl.'s Br. 5. In support, Plaintiff notes that Listing § 1.02 "defines disability as 'an inability to ambulate effectively' due to anatomical deformity and chronic joint pain with signs of limitation of motion or other abnormal motion of the affected joint involving one major peripheral weight-bearing joint (hip, knee, ankle). Pl.'s Br. 4 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1).

The Commissioner argues that Plaintiff failed to proffer any evidence that she met or equaled Listing § 1.02 or § 1.04, and therefore the Court has no basis to determine whether

Plaintiff met the elements of either listing. Def.'s Br. 4-5. Although Plaintiff's argument is decidedly cursory, it is clear that Plaintiff assigns error as to Listing § 1.02, presumably based on Dr. Carroll's report of antalgic gait. Pl.'s Br. 4-5.

In order to establish Listing § 1.02, the following elements must be established: (1) major dysfunction of a peripheral weight-bearing joint; (2) resulting in inability to ambulate effectively as defined in 1.00B2b; (3) characterized by gross anatomical deformity (subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness; with (4) signs of limitation of motion or other abnormal motion of the affected joints; and (5) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joints. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Inability to ambulate effectively is defined as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b (emphasis added). Although the need for an assistive device "to walk independently about one's home without the use of assistive devices" is not necessarily dispositive, the regulations provides the following examples: "inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry our routine ambulatory activities . . . and the inability to climb a few steps at reasonable pace with the use of a single hand rail." Id.

OPINION & ORDER - 21

Plaintiff does not contend that her DJD meets any of the requisites listed above, or that she has walking limitations similar or equivalent to any of the examples listed in § 1.00B2b. The latest chart note of record, January 28, 2013, notes right-sided antalgia, and that Plaintiff's trunk was flexed forward. Tr. 495. However, the note additionally mentions "good resistance at all major joints in the lower extremities in the seated position," intact sensation, and a range of motion "within normal limits considering body habitus." Id. Accordingly, the fourth element of Listing § 1.02, for range of motion or other abnormal motion, is not met. Further, although Plaintiff reported difficulty walking and Dr. Carroll noted slow ambulation, the record does not otherwise include any prescription for or use of ambulatory assistive devices. As such, Plaintiff has not established the ALJ erred in finding she did not meet Listing § 1.02. Because Plaintiff does not offer a cogent argument assigning error regarding Listing § 1.04, the Court has no basis to displace the ALJ's step three findings. In addition, clear error is not evident upon independent review of the ALJ's findings and the relevant medical record.

V. Step Five Error

Plaintiff asserts that based on errors at preceding steps of the sequential evaluation process, the ALJ's step five finding was not based on substantial evidence. If the ALJ's hypothetical questions to the VE do not include all of a claimant's functional limitations, the VE's answers are of no evidentiary value. DeLorme, 924 F.3d at 850.

As discussed herein, the ALJ failed to provide legally sufficient reasons to discredit symptom allegations attributed to Plaintiff's degenerative conditions in her lumbar spine and bilateral hips, including testimony that she must lay down for up to an hour more than once per day, inability to sit or stand for an hour at a time, and impairment in concentration due to pain. Tr. 49-52. Plaintiff's testimony was corroborated in large part by the three lay witnesses of

record, who described severe functional limitations, which had worsened after approximately

2010, such that she required assistance to perform even basic activities such as personal care,

household chores, and grocery shopping. Tr. 250-57, 316-18. Because the ALJ erred in

disregarding this testimonial evidence, the ALJ's hypothetical questions cannot be said to be

based on substantial evidence. Remand is therefore appropriate.

VI. Remand for Further Proceedings

Plaintiff argues that this case be remanded for an award of benefits, or as a lesser

alternative, further proceedings. When a court determines the Commissioner's ultimate disability

decision includes legal error and/or is unsupported by substantial evidence, the court may affirm,

modify, or reverse the decision by the Commissioner "with or without remanding the case for a

rehearing." 42 U.S.C. § 405(g); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099

(9th Cir. 2014). However, where it is clear from the record that an ALJ's error was

"inconsequential" to the ultimate decision, the error is considered harmless and the decision must

be upheld. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1055-56 (9th Cir. 2006). Here, the ALJ

failed to provide clear and convincing reasons to discredit Plaintiff's pain allegations and the

testimony of three lay witnesses, which negated the validity of the step five findings. Because

any of these errors may have potentially affected the ultimate determination of non-disability,

remand is appropriate.

In determining whether to remand for immediate payment of benefits, the Ninth Circuit

employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has

failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully

developed and further proceedings would serve no useful purpose, and (3) if the improperly

discredited evidence were credited as true, the ALJ would be required to find the plaintiff

disabled on remand. <u>Garrison</u>, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" <u>Id.</u> at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. <u>Dominguez v. Colvin</u>, 808 F.3d 403, 407 (9th Cir. 2015) (citing <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the first requisite is met based on the ALJ's harmful legal errors. However, the Court finds that the second requisite is not met, as the record in this case is not fully developed. While the Court agrees that the ALJ did not adequately consider the pain testimony of Plaintiff, or the observations of the lay witnesses as to the functional limitations arising from Plaintiff's lumbar spine and hip conditions, particularly in light of evidence of significant worsening by 2011, the functional effect of the worsening remains ambiguous. Dr. Carroll's written statement that Plaintiff is "quite limited functionally," in conjunction with physician recommendations that she pursue hip surgery, suggests a significant, yet undefined, level of impairment. Tr. 494-502. Further proceedings are therefore necessary to reconsider the validity of Plaintiff's pain and functional limitation allegations, as well as the credibility of the testimonial statements of the lay witnesses. Additionally, the ALJ on re-hearing should seek further objective evidence as to Plaintiff's functional limitations, either by seeking clarification from Plaintiff's treating physician, a consultative physician, or both. Finally, the ALJ should apply SSR 16-3p to any relevant credibility evaluation.

Because the Court finds the further proceedings are necessary to develop the record, the Court does not reach the credit-as-true component of the remand inquiry. Regardless, the Commissioner has proffered sufficient evidence of inconsistency between the testimony and the medical evidence such that serious doubt remains as to whether Plaintiff is, in fact, disabled under the Act. Burrell, 775 F.3d at 1141.

## Conclusion

For the reasons discussed above, the Commissioner's ultimate decision was not based on substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for further proceedings consistent with this Opinion.

DATED this 13th day of October, 2016.


 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge